Good morning. May it please the court. It is my privilege to be here this morning to argue on behalf of the appellant Kenneth Gouin. My name is Ralph Hurwitz. Mr. Gouin was convicted of a single count of possession of visual images of minors engaged in sexually explicit conduct. That would be 18 U.S.C. 2252A4B. As that statute was worded prior to its amendment in October of 2008, the jurisdictional requirement was that one of those visual depictions or more than one had to be mailed, shipped, or transported in interstate or foreign commerce. That was the sole issue in dispute at trial and the sole issue that is before the court today. This is an element of the offense, and I would suggest that the government fail to prove that element beyond a reasonable doubt. I would note that the version of the statute that was in effect prior to October of 2008 did not confer jurisdiction based on the instrumentality of interstate commerce, did not confer jurisdiction based upon conduct that affected interstate commerce. It required specifically that one or more images were shipped or transported in interstate or foreign commerce. In this particular case, Mr. Gouin did whatever he did in the privacy of his own basement. He was on his computer. He accessed the Internet. He then downloaded some of the images. Some were on diskettes. Some were printed out. He didn't know where those images were coming from. How do we deal with Mr. Pardee's testimony that your client said one of the images came from a Japanese website? The statement by Mr. Gouin was based on the fact that the website had some characters on it that were, to him, Japanese. Mr. Gouin is not an educated fellow, and he would have no way of knowing where that website was actually hosted. In the present case, Judge Lasnik found that it is impossible to determine whether Mr. Gouin got those images from a server that was located within the state of Washington or outside of the state of Washington. It was testimony both from a government witness, Mr. Cruz, who worked for Comcast, as well as from Mr. Young, defense expert witness. What Judge Lasnik did was essentially to adopt the holding of the Third Circuit in the United States versus McEwen. And McEwen of the Third Circuit said that once a user submits a connection request to a website server, or data is transmitted from that server to the user, whether it's interstate or intrastate, that data the Third Circuit deemed to have traveled in interstate commerce. Two things. First of all, I would challenge the wisdom of the holding in McEwen. And secondly, in light of the statutory amendment, I think, well, I haven't seen it yet, but I would wonder what the Third Circuit is going to do if it needs to revisit that holding. Well, let's assume it's not that a connection to the Internet doesn't automatically transform an image, transform to a holding, that the image is transported into interstate commerce. I mean, the district court also had relied on other pieces of evidence. For example, there are six series of pictures depicting the sexual exploitation of minor children of abuse in six different states, Illinois, Missouri, North Carolina, Pennsylvania, Idaho, and Texas. What do we do with that finding? Well, I would urge the court to look at the testimony of Mr. Young. There is no question that it is likely that those original pictures were taken in those six various states. At some point, to get them to Mr. Gouin, the image had to be digitized in some way. Mr. Young indicated that once it was originally digitized, when it was uploaded to a website, uploaded to a server, the image is compressed. And when I say image, Your Honor, what we have is a series of ones and zeros. It's binary. It's binary, exactly. But it comes out at the end being the same as it was at the beginning, is that right? Not necessarily. That's exactly the point. It may look similar, but I would not say it's the same. What happens besides the compression is sometimes there is text added, again, changing the digital composition. Sometimes there is what they call a watermark, just a picture or something added to the original composition. And then the digital composition is then compressed and expanded as the image travels from server to server and to its ultimate destination. Could it look similar? Sure. Does that mean it's the same? No. Why does it have to be the same? Well, I would suggest that the court look at the... As long as it was, you know, as long as it was transmitted or transported across the state line. Why does it have to be the same? In other words, suppose, you know, I have a photo on a piece of paper, and I take it from Washington to Idaho, and then I cut it up and, you know, give you this little piece that's not the same. Well, what difference does that make? Because with that example, Your Honor, when you took the piece of paper and took it from Washington to Idaho, you've completed the interstate component of the transmission. I would suggest that if that's a concern for the court to look at the case of the United States v. Wilson. No, it's your concern. I'm asking, you're the one who's concerned with it, and I'm asking why you are concerned with it. Namely, because it's not exactly the same. In other words, after it's digitized and then, you know, transmitted and it's reproduced, at the other end it's not the same. Right. And you're concerned that the fact that it's not exactly the same makes some difference. It does. Well, you have to tell me why it makes a difference. Because the jurisdictional requirement of 18 U.S.C. 2252A4B requires the interstate transportation, under the version prior to October 8, 2008, required that a visual depiction, and I focus on that term, the visual depiction be shipped or transported or mailed, but mailing is not an issue in this case. Right. That visual depiction be shipped or transported. It's not like we can have something here in one state and have something else in another state and call it a visual depiction that has been shipped or transported. That's two different visual depictions, because in this case, the binary composition is different. Again, in the Wilson case, for example, in the Tenth Circuit, it drew a distinction between, for example, an image that was in a magazine and that was then photocopied and then the photocopy went somewhere else. And the Tenth Circuit drew that distinction saying that that's not the same. It looks the same. It's a copy, a photocopy. Not the same. But the Tenth Circuit also held out the possibility that testimony about where a website was housed, or in this case, a bull and board service, could be sufficient. It could be if you could identify where it is. In this case, there is no way to tell where the server was located from which Mr. Gouin got the images. Yes. What do you do with the testimony that law enforcement has found no such website in the state of Washington? Well, I would suggest looking at the testimony, and I know I'm out of time, but I'd be happy to answer the Court's questions. And I also hope to save some time for rebuttal, but I guess I didn't do a good job of that either. Okay. Mr. Young indicated that there can be proxy servers. In other words, Mr. Gouin, the testimony showed, was a Comcast subscriber. The Comcast witness, Mr. Cruz, indicated that there were Comcast servers in the state of Washington. That in addition to that, Mr. Young testified that there could be a proxy server that was accessed. In other words, when another customer, a customer other than Mr. Gouin, made a request for a certain image, rather than Mr. Gouin or a subsequent customer who requested the same image having to go to the original server, that a proxy server, which could be located, again, anywhere in the state of Washington or elsewhere, if that image were a faster connection, then that would be where Mr. Gouin's request would go. Judge Lasnik even found that there was no way to tell where a server, whether it be a proxy server or an original server, was located from which Mr. Gouin would have gotten those images. I think we have your argument at hand. We'll give you some time for rebuttal. Thank you. The government. May it please the Court. My name is Susan Dorman. I'm an assistant United States attorney here in Seattle, and I represent the United States in the case of United States of America v. Kenneth L. Gouin. May it please the Court.  My question to the Court this morning is, of course, whether or not the government, whether there's sufficiency to Evans' challenge is what we have here is what I meant to say, is whether the government has proved beyond a reasonable doubt the interstate commerce element of the offense charged. The evidence at trial, which was uncontroverted, is that sexually explicit visual depictions of children being molested were produced in Illinois, Missouri, North Carolina, Idaho, Pennsylvania, and Texas. Equally uncontroverted is the evidence that sexually explicit visual depictions of those very same children found their way to Mr. Gouin's residence in Des Moines, Washington. Standing, stopping right there, Your Honors, I would submit that there is conclusive proof that the government has proved that interstate transportation, shipping, not mailing, but transportation of the visual depictions because they simply couldn't have gotten from where they started in those points outside of this state to the point inside this state without there having been the interstate commerce. So if we adopted, for example, the Tenth Circuit rule in Wilson rather than the Third Circuit's approach... I'm sorry, Your Honor, I can't hear you. If we adopted the Tenth Circuit's approach in Wilson versus the Third Circuit's approach, in your view it wouldn't make any difference in this case. Versus the Third Circuit's approach? I'm not sure which case the... Well, for example, when we're talking, the Third Circuit seems to have taken the position that if it travels at all on the Internet, then that necessarily means it travels in interstate commerce. That's true, and that's the McEwen case. Right. And so the Tenth Circuit takes a different approach. The Schaefer case, you mean? Well, I'm talking about Wilson myself, but I... Well, Your Honor, I think the first answer to that is the court doesn't even have to reach that question. Well, that was my question of you, is assuming we follow the Tenth Circuit instead of the Third Circuit, what does that do to your case? I think the court doesn't have to reach whether there's Internet involvement or not here. The Internet is the one vehicle by which the interstate transportation can occur. Images can be driven here, they can be mailed, et cetera. The point is whether there is sufficient evidence that there has been this movement. And as Judge Lasnik said in his memorandum of decision at Exeter Record, page 5, he notes, and I think obviously correctly, even before he gets to his view that he believes that this circuit is going to adopt the McEwen rationale, that once you've used the Internet, it's kind of over. He believes that, but here we are. I mean, this case presents the question, if we want to reach it, whether we adopt McEwen, the Third Circuit's approach, or Wilson-Shafer, the Tenth Circuit's approach. That's exactly right, Your Honor, but you don't have to reach the case to reach that question, that broader question, I don't believe. Although you certainly can. Now, why don't we have to reach it? You're sort of saying we don't have to address the appellant's contention. No, I'm really not, Your Honor. I think the appellant's contention that it's not the same image because there could be this watermark or some sort of modification, according to Mr. Young's testimony, misses the mark entirely. And frankly, that it's a red herring. Because what we do know, first of all, is that Mr. Young never saw any of the images. That's in the record. And he certainly never saw the victims in the various cases. I don't see this case as any different than if you knew there was a stolen car in the state of Nebraska and you could identify that car. And that stolen car turns up in Seattle, Washington, and you can identify that you have some means of identification that it is the same. What is the same here, Your Honors, is not zeros and ones necessarily or the addition of a watermark or whether something is a compressed file. What must be the same is that the sexually explicit activity in that image of that particular child in Des Moines, Washington, the images that are found, the visual depictions found here, are those same children, that same sexually explicit activity. And over and over and over again through six witnesses, the government presented that evidence. And that's what Judge Glasnick first addresses. He goes through all the other rationale, including the Third Circuit. That's right. Before Judge Glasnick addressed, however, the Internet issue and his view that McEwen was a correct analysis, he takes, frankly, the more, well, I would say not the more, but the common sense approach to this question. Do we have images that we know are produced outside of the state? Do we have those same depictions? And by that I mean I want to be clear because I have a different and I think this Court must have a different understanding of the word same. They are the same visual depictions because they depict the same children and the same sexually explicit activity. And that's where it marries up. We would have an entirely different question if the agents had looked at the exhibits at trial and said, ooh, I don't think that, that isn't the victim I saw. That isn't the residence where I was. Just to frame the issue so that, let me give you a hypothetical. Let's assume hypothetically that all the victims are from Washington and that these images found were all, everybody concedes the victims were in Washington. Would the use of the Internet alone make or justify satisfaction of the component of interstate commerce? It might not. It might not. We all understand that the statute reads differently now, but back then it may not. But, again, that would be a question for another day because what we do have is the opposite of what the Court's hypothetical is. We have six victims of known series, six different states, from here to the other side of this country, not victims in Washington. We think that the Internet was used to get them here, and we think that. We make that conclusion because of what the defendant said. But if the defendant hadn't said anything, or if for some reason the computer wasn't there and we only had a case based on all of the images that he had printed out of these children, for example, our argument would be exactly the same. We know who those victims are. We know where those images were produced, and we know where they ended up. And, therefore, the government has definitely made its case. It's actually a very straightforward case, Your Honor, and looking or trying to weave into the issue before the Court, zeros and ones and compression issues. That was the defense in the case, Your Honor. That was their own defense. It's not something that they're conjuring up on appeal. That's what they put on expert testimony. I understand that, Your Honor, but I don't think it addresses what the real issue was. One of the things that the defense has never acknowledged, either at trial or in any of the pleadings, and it may seem a minor point, but I submit that it is not, is he does not use the word produced. He says pictures were taken because if those images, those visual depictions are acknowledged as produced, which is statutory language as well, produced elsewhere, and we have here the identical sexually explicit activity with the identical children, I would submit that his argument is over, and he must recraft it in some way. This case does not implicate Schaeffer. Schaeffer itself talks about what was missing in that case, and one of the things that was missing was any geographic association with the minors where the actual images were produced. That's precisely what we did have in this case, and not once and not twice, but six different times. When you look at this particular evidence, whether this court decides to adopt McEwen's approach and other cases that have held that use of the internet, even before obviously this modification of statute gets us to interstate commerce or not, if you look at the evidence in light most favorable to the government, this verdict must stand. It is actually a very straightforward case, we would submit, Your Honors, and if there are any further questions, I would respectfully submit that this verdict should be affirmed. Thank you, Counsel. We'll give you two minutes for rebuttal. Thanks, Your Honor. Your Honor, a point made by Ms. Dorman I think drives home my point. She tried to analogize the pictures that were taken in these six various states and compare them to the images that were found here in Washington with a car that is stolen in one state and then that car is found in another state. It's the same argument that the government raised in its brief with regard to guns under 922G prosecutions. The difference is this. A car, as we know, has a unique vehicle identification number within and it is not transformed into a series of ones and zeros and compressed with text or watermarks added and then appears in another state in some fashion. Same thing with a gun. A gun has a unique serial number and it is not transformed into a digital image and somehow moved to another state. The example of the car, the example of the gun, shows why visual images which are digitized, compressed, things added, expanded, and then the binary image somehow translated back into something visual is very, very different. I would suggest that faced with this problem, that might well be one of the reasons Congress amended the statute so that now under the current reading of 18 U.S.C. 2252A4B, the use of the Internet as an instrumentality will give federal jurisdiction. No, but wouldn't your objections still apply under the new statute?  Under the new statute, Your Honor? Well, I mean, you use the facility of the Internet, but it's not the same image. I can explain the difference. No, no, no, no. Don't explain the difference. All right. Any further questions? I think we have your argument in hand. Thank you both for your arguments. Appreciate your time. And we will be in recess for the morning. Okay.
judges: Fletcher B. , Tashima, Thomas